# Federal Defenders
## OF NEW YORK, INC.

Southern District
52 Duane Street, 10th Floor
New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

---

Tamara Giwa
*Executive Director*

Jennifer L. Brown
*Attorney-in-Charge*

**MEMO ENDORSED**

October 30, 2024

**BY ECF**

The Honorable Edgardo Ramos
Southern District of New York
United States Courthouse
40 Foley Street
New York, New York 1007

> A bail hearing will be held on November 7, 2024, at 2 p.m.
> SO ORDERED.
>
> */s/ Edgardo Ramos*
> Edgardo Ramos, U.S.D.J.
> Dated: 10/30/2024
> New York, New York

Re: **United States v. Fareed Dabidah**
    **24-CR-514 (ER)**

Dear Judge Ramos:

   I write to appeal the Magistrate Judge's detention order in this matter pursuant to 18 U.S.C. § 3145(b). I respectfully request that the Court schedule a bail hearing on Thursday, November 7, 2024 at 2:30 p.m. to address this appeal.

   I.   Background

   Fareed Dabidah is a 22-year-old young man who has never before been arrested or convicted of any crime. Since the age of two, Mr. Dabidah has strictly resided in the Bronx, New York. To emphasize that point, he was raised in the Bronx, he graduated from high school in the Bronx, and he was employed in the Bronx as a custodian up until the day of his arrest in this case. Mr. Dabidah comes from a loving, two-parent household, and his mother and father stand ready to welcome him back to their home if released on bail.

   In this case, Mr. Dabidah is charged with a single count of possession of a machinegun, in violation of 18 U.S.C. § 922(o)(1). Specifically, the government alleges, among other things, that Mr. Dabidah was in possession of various 3D printed firearms and firearm components, including conversion devices used to make these weapons fully automatic. Despite this, there are no allegations that Mr. Dabidah sold any of these firearms or firearm components.

   On August 15, 2024, Mr. Dabidah appeared before a Magistrate Judge for his initial presentment. A contested bail hearing was conducted that same day. At the bail hearing, the government argued that Mr. Dabidah was both a danger and a flight risk based on the nature of the offense and the fact that it apparently took Mr. Dabidah several minutes to come to the door when officers appeared at his home to execute the arrest warrant. The government used this alleged delay to argue that Mr. Dabidah was attempting to hide some of the firearms found in his home, and further, that Mr. Dabidah might attempt to destroy evidence if released on bail.

At the conclusion of the hearing, the Magistrate Judge found that there were no conditions of release that could be imposed to ensure the safety of the community and Mr. Dabidah's future appearance. The Magistrate Judge's decision, however, ignored clear evidence to the contrary. For the reasons set forth below, Mr. Dabidah now moves to appeal that decision pursuant to 18 U.S.C. § 3145(b), and asks that the Court release him on the following proposed conditions:

1) $25K Bond Co-signed by One Financially Responsible Person and One Moral Suasion Co-Signer;

2) Travel Restricted to SDNY/EDNY;

3) Home Detention, Enforced by Location Monitoring;

4) Reside with Parents at their Apartment in the Bronx, New York, and Not Relocate Without Prior Approval from Pretrial Services;

5) Refrain from Possession of a Firearm, any Firearm Component, 3D Printer, Destructive Device, or Other Weapon; and

6) Any Other Condition Deemed Appropriate by the Court

## II.  Standard of Review

On a motion for review of a Magistrate Judge's detention order, this Court must "fully reconsider" the issue of bail and render its own determination de novo. *See United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985). "The burden of proof is on the government to prove by a preponderance of the evidence that there are no conditions or combination of conditions that will reasonably assure the presence of the defendant at trial if he is released. The government has the burden of proving by clear and convincing evidence that the defendant poses a danger to the community." *United States v. Campbell*, 28 F. Supp. 2d 805, 810 (W.D.N.Y. 1998).

## III.  Legal Framework

The Bail Reform Act requires the Court to order the pretrial release of Mr. Dabidah, subject to the least restrictive condition or combination of conditions, unless the Court determines that such conditions will not reasonably assure his appearance as required or the safety of the community. *See* 18 U.S.C. §§ 3142(b), (c)(1)(B). Importantly, the Bail Reform Act "codified not only the federal case law by recognizing the courts' inherent authority to preserve their jurisdiction by denying bail in extreme cases, but also the traditional presumption favoring pretrial release for the majority of Federal defendants." *United States v. Berrios-Berrios*, 791 F.2d 246, 250 (2d Cir. 1986) (internal quotations and citation omitted). As such, "it is only a limited group of offenders who should be denied bail pending trial." *United States v. Sabhani*, 493 F.3d 63, 75 (2d Cir. 2007) (internal quotations and citation omitted).

In determining whether there are conditions of release that will reasonably assure Mr. Dabidah's appearance and the safety of the community, the Court must take into account the available information concerning: (1) the nature and circumstances of the offense; (2) the weight of the evidence against Mr. Dabidah; (3) the history and characteristics of Mr. Dabidah; and (4) the nature and seriousness of danger to the community if released. *See* 18 U.S.C. § 3142(g). Critically, the weight of the evidence is the least important factor because Mr. Dabidah must be presumed innocent at this stage of the proceedings. *See United States v. Fama*, 2013 WL 2467985, at *3 (S.D.N.Y. June 7, 2013).

## IV. Argument

### a. The government has not met its burden by clear and convincing evidence of showing the proposed release conditions would be ineffective in assuring the safety of the community.

Nothing in Mr. Dabidah's past suggests that he is an individual who poses a danger to the community. In finding that Mr. Dabidah presented a clear danger to the community, the Magistrate Judge relied on the offense conduct in this case; namely, the firearms and firearm components found in Mr. Dabidah's home. The concerns raised by the Magistrate Judge, however, do not justify the decision denying bail.

As a threshold matter, the nature of the offense, alone, should not warrant detention. Although possession of a machinegun is a rarely charged crime in this district, defendants being granted bail in these cases is not without precedent. *See, e.g.*, *United States v. Campanga*, 16-CR-78 (LGS) (granting bail to both defendants facing charges of firearm trafficking and possession of a machinegun); *United States v. Pimentel*, 24-CR-570 (LAK) (granting bail to defendant charged with two counts of conspiracy to possess and transfer a machinegun).

Moreover, Mr. Dabidah has no prior criminal record, and he has never before been arrested or accused of violent or dangerous conduct. Hence, there is no evidence to support even the suggestion that he was planning to use these firearms to carry out violence against another individual. Nor are there are any allegations that Mr. Dabidah was selling these firearms or firearm components. Simply put, Mr. Dabidah is not a dangerous individual.

Importantly, one of the proposed conditions of Mr. Dabidah's release would be that he not possess any firearms, firearm components, or 3D printers. The government has not presented any evidence to suggest that Mr. Dabidah would disregard such a directive. Indeed, Mr. Dabidah's past suggests that he is largely a law-abiding individual. For all of these reasons, the government has not met its burden of demonstrating by clear and convincing evidence that the proposed release conditions would not adequately assure the safety of the community.

      **b. The government has not met its burden by a preponderance of the evidence of showing the proposed release conditions would be ineffective in assuring Mr. Dabidah's future appearance.**

Nothing in Mr. Dabidah's past suggests that he is a flight risk. Mr. Dabidah has been a lifelong resident of the Bronx since the age of two. To that point, he was raised in the Bronx, graduated from high school in the Bronx, was employed in the Bronx and, if released, has a home to return to in the Bronx. Furthermore, Mr. Dabidah has strong family ties to the Bronx, as both of his parents reside there. Importantly, if released, Mr. Dabidah would return to living with his parents in the Bronx.

As an aside, the government's suggestion that Mr. Dabidah might destroy evidence if released should carry little weight. At this point, the government has already executed a search warrant at Mr. Dabidah's home and has seized all relevant evidence, including electronic devices. Hence, even if the destruction of evidence was an actual concern several months ago, there is nothing left for Mr. Dabidah to destroy.

To the extent the Court has any lingering concerns, a condition requiring home detention enforced by location monitoring would give added assurance that Mr. Dabidah's whereabouts are known at all times. Furthermore, a bond requirement would act as an additional deterrent to flight. For all of these reasons, the government has not met its burden of demonstrating by a preponderance of the evidence that the proposed conditions set forth above would not adequately assure Mr. Dabidah's future appearance. *See United States v. Madoff*, 586 F. Supp.2d 240, 248-49 (S.D.N.Y. 2009) ("The [Bail Reform] Act does not require that the risk [of flight] be zero, but that conditions imposed 'reasonably assure' appearance.").

      **c. The conditions at MDC Brooklyn are an exceptional reason to release Mr. Dabidah.**

It is no secret that the conditions of confinement at MDC Brooklyn are abhorrent. *See, e.g.*, *United States v. Morgan*, 19-CR-209 (RMB) (S.D.N.Y. May 5, 2020), Doc. 90, Tr. 12:25-15:21 (Judge Berman describing MDC Brooklyn as "terrible, "dirty," and a "seriously deficient system at core"). *United States v. Days*, 19-CR-619 (CM) (S.D.N.Y. Apr. 29, 2021), Doc. 35, Tr. 19:5-13 ("The single thing in the five years that I was chief judge of this court that made me the craziest was my complete and utter inability to do anything meaningful about the conditions at the MCC, especially at the MCC and the MDC, two federal correctional facilities located in the City of New York that are run by morons, which wardens cycle repeatedly, never staying for longer than a few months or even a year. So there is no continuity, there is no leadership, there is no ability to get anything done.").

Earlier this year, Judge Furman issued a scathing nineteen-page opinion calling out these terrible conditions. *See* Exhibit 2, *United States v. Chavez*, Case No. 22-CR-0303-JMF (S.D.N.Y.), Dkt. 31. Among the conditions that Judge Furman highlighted include the constant lockdowns which are tantamount to solitary confinement, ignored medical orders, and an inhumane housing environment that exposes inmates to visible mold, contaminated drinking water, and vermin infestation. *Id.* at 9-12. Judge Furman noted that one of the driving forces behind

4

these problems was severe understaffing -- finding that the facility was operating at about 55% of its full staffing capacity. *Id.* at 14. And given that these staffing shortages were unlikely to change in the near future, Judge Furman concluded that "the only option is to reduce – or at least not add unnecessarily to – the prisoner population." *Id.* at 15.

While efforts have been made to address the staffing shortages at the MDC, it remains the case that this facility is a substandard environment. Recently, the MDC has seen two separate murders, and a total of nine inmates charged in connection with those incidents.[1] Furthermore, just this week, multiple federal law enforcement agencies launched an interagency operation at the MDC due to the apparent safety issues at the facility.[2]

Here, it would be unnecessary to have Mr. Dabidah remain in an already overpopulated facility like the MDC. Nothing from his past suggests that he is a danger or a flight risk. And the proposed condition of home detention enforced by location monitoring, as well as the prohibition on possessing any firearms, firearm components, or 3D printers, would add an additional layer of assurance to alleviate any concerns the Court may have. Accordingly, as many judges in this District have done in response to the MDC's terrible conditions, Mr. Dabidah respectfully asks the Court to release him on the conditions proposed above. *See United States v. Chavez*, 22 Cr. 303 (JMF) (S.D.N.Y. Jan. 4, 2024) (continuing release following plea to 21 U.S.C. § 841(b)(1)(C) finding the "dreadful conditions" at the MDC are "exceptional reasons" for bail and noting "the only other way to mitigate the ongoing tragedy is to improve the ratio of correctional officers to prisoners by reducing—or at least no[t] adding to—the prisoner population"); *United States v. Irizarry*, 23 Cr. 60 (JMF) (S.D.N.Y. Jan. 4, 2024) ("exercising its broad discretion in these matters, the Court has authority to, and does, continue [Irizarry's] bail through the date of his sentencing" because of MDC conditions notwithstanding plea to 21 U.S.C. § 841(b)(1)(B)); *United States v. Stuart*, 23 Cr. 137 (KPF) (S.D.N.Y. Feb. 22, 2024) (continuing release following plea to 21 U.S.C. § 841(b)(1)(A) with safety valve finding MDC conditions and client's need for oral surgery are "exceptional reasons" for bail); *United States v. Henderson*, 23 Cr. 342 (JGLC) (S.D.N.Y. Feb. 1, 2024) (continuing release following plea to 21 U.S.C. § 841(b)(1)(B) with safety valve finding MDC Brooklyn conditions are "exceptional reasons for bail"); *United States v. Luque Garay*, 22 Cr. 678 (KPF) (S.D.N.Y. Feb. 1, 2024) (continuing release following plea to 21 U.S.C. § 841(b)(1)(C) and possession of child pornography finding MDC conditions of confinement are "exceptional reasons" for bail); *United States v. Fayton*, 23 Cr. 001 (JLR) (S.D.N.Y. Jan. 30, 2024) (calling the MDC "grim and unacceptable" and finding "exceptional reasons" to continue release after plea to 21 U.S.C. § 922(g) noting MDC conditions should be considered among other circumstances); *United States v. Paul Rowe*, 23 Cr. 629 (PAE) (S.D.N.Y. Jan. 22, 2024) (continuing release following plea to 21 U.S.C. § 841(b)(1)(C) finding MDC conditions are "exceptional reasons" for bail); *United States v. Rivera*, 23 Cr. 236 (PAE) (S.D.N.Y. Dec. 5, 2023) (continuing release following plea to 21 U.S.C. § 841(b)(1)(A) with safety valve finding MDC conditions are "exceptional reasons" for bail); *United States v. Virga*, 23 Cr. 324 (VEC) (S.D.N.Y. Jun. 29, 2023) (continuing release following plea to 21 U.S.C. § 841 (b)(1)(C) where defendant also stipulated to selling two illegal firearms finding MDC conditions are "exceptional reasons" for bail); *United States v. Arias*, 22 Cr. 495 (PAE), Dkt. 34 (S.D.N.Y. May 5, 2023) (continuing release following plea to 21 U.S.C. § 841 (b)(1)(C) because the conditions at the MDC "have been

---

[1] https://apnews.com/article/federal-jail-brooklyn-diddy-bureau-of-prisons-afd6aebdfacd70286955f8c1bbf1cd6e
[2] https://apnews.com/article/diddy-jail-brooklyn-federal-prisons-ac89fcc984eba107a4585b57534df0ca

described to me by too many people in too many cases for it any longer to be factually disputable that it just an inhospitable, terrible place to be" and "avoiding putting a defendant in conditions like that qualifies as an exceptional reason under 3145(c)"); *United States v. Boyd*, 21 Cr. 486 (SHS) (S.D.N.Y. Feb. 3, 2022), Dkt. 74 (continuing release following plea to 21 U.S.C. § 841(b)(1)(C) finding MDC conditions of confinement are "exceptional reasons" for bail).

## V. Conclusion

For all of the reasons stated herein, Mr. Dabidah respectfully asks the Court to release him on the following proposed conditions:

1) $25K Bond Co-signed by One Financially Responsible Person and One Moral Suasion Co-Signer;

2) Travel Restricted to SDNY/EDNY;

3) Home Detention, Enforced by Location Monitoring;

4) Reside with Parents at their Apartment in the Bronx, New York, and Not Relocate Without Prior Approval from Pretrial Services;

5) Refrain from Possession of a Firearm, any Firearm Component, 3D Printer, Destructive Device, or Other Weapon; and

6) Any Other Condition Deemed Appropriate by the Court

Respectfully Submitted,
/s/
Kristoff I. Williams
Assistant Federal Defender
Federal Defenders of New York
(212) 417-8791