UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

– against –

FAREED DABIDAH,

              Defendant.

**OPINION & ORDER**

24-cr-00514 (ER)

RAMOS, D.J.:

    Fareed Dabidah is charged with one count of illegally possessing machineguns, in violation of 18 U.S.C. § 922(o). Before the Court is Dabidah's motion to dismiss the indictment as violative of his Second Amendment protections. For the reasons set forth below, the motion is DENIED.

## I. BACKGROUND

    On August 15, 2024, the New York City Police Department ("NYPD") searched Dabidah's apartment in the Bronx pursuant to a warrant issued by the Honorable Sarah L. Cave. Doc. 1 ¶¶ 2–6. During the search, NYPD officers found various firearms and firearm attachments which included: dozens of 3D-printed firearms (including handguns and assault rifles); approximately 39 machinegun conversion devices that could enable fully automatic fire from the 3D-printed firearms; approximately 8 firearms which had been equipped with the machinegun conversion devices; two firearms silencers; handgun and rifle ammunition and magazines; two 3D-printers; and equipment and supplies needed to reload and manufacture rifle and handgun ammunition. *Id.* ¶¶ 6–7.

    Dabidah was arrested and charged by complaint the same day as the search. *Id.* Two weeks later, on August 29, 2024, Dabidah was indicted by a grand jury and charged with one count of illegally possessing firearms equipped with machinegun conversion

devices, and parts designed and intended solely for converting additional weapons into machineguns, in violation of 18 U.S.C. § 922(o)(1).  Docs. 4, 5.

Section 922(o) criminalizes the unlawful possession or transfer of a machinegun. A machinegun is defined as "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger."  26 U.S.C. § 5845(b).  This includes "any part designed and intended solely and exclusively . . . for use in converting a weapon into a machinegun."  *Id.*

## II.    LEGAL STANDARD

Federal Rule of Criminal Procedure 12 provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits."  Fed. R. Crim. P. 12(b)(1).  This includes a motion to dismiss an indictment on the grounds that the statute on which the indictment is premised is unconstitutional.  *See, e.g.*, *United States v. Rampersant*, 704 F. Supp. 3d 373, 377 (E.D.N.Y. 2023) ("A pre-trial motion to dismiss the indictment is a proper vehicle to raise a constitutional challenge to the charging statute."); *United States v. Craft*, No. 23-cr-00178 (PMH), 2023 WL 6215326, at *2 (S.D.N.Y. Sept. 25, 2023).

## III.   DISCUSSION

Dabidah moves to dismiss the indictment, arguing that § 922(o)'s prohibition on the possession of machineguns is unconstitutional as applied to him.  Doc. 21 at 4.

The Second Amendment provides:  "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. Const. amend. II.  In recent years, the Supreme Court has interpreted the Second Amendment as guaranteeing the "individual right to possess and carry weapons in case of confrontation," which does not depend on militia service.  *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1, 20 (2022) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008)).

To determine whether a statute regulating the possession of firearms burdens an individual's exercise of the Second Amendment, the Supreme Court established a new two-part test in *Bruen*, 597 U.S. at 24.[1]  First, a court must look to whether the "the Second Amendment's plain text covers an individual's conduct." *Id.*  If it does, "the Constitution presumptively protects that conduct," and the "government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.*  "*Bruen* therefore sets out a two step-framework, with the first step based on text and second step based on history." *Antonyuk v. James*, 120 F.4th 941, 964 (2d Cir. 2024).

Dabidah argues that the plain text of the Second Amendment covers his possession of firearms equipped with machinegun conversion devices, and that the government fails to satisfy its burden of showing that § 922(o)'s prohibition on possessing machineguns is consistent with the Nation's historical tradition of firearm regulation.  Doc. 21 at 1–4.

### A. Step One

At step one, the Court must determine whether § 922(o) bars conduct that is protected by the "plain text" of the Second Amendment. *Bruen*, 597 U.S. at 24.  To do so, courts consider "whether the conduct at issue is protected [by the Second Amendment], whether the weapon concerned is 'in common use,' and whether the affected individuals are 'ordinary, law-abiding, adult citizens' and thus 'part of the people whom the Second Amendment protects.'" *Antonyuk*, 120 F.4th at 981 (quoting *Bruen*, 597 U.S. at 31–32); *see also Rocky Mountain Gun Owners v. Polis*, 121 F.4th 96, 113–

---

[1] Prior to *Bruen*, the Second Circuit and other courts of appeals applied a different two-part test which required courts to ask, at step one, "whether a challenged law burdened conduct that fell within the scope of the Second Amendment based on its text and history." *Antonyuk v. James*, 120 F.4th 941, 963 (2d Cir. 2024).  Step two asked "whether the challenged law burdened the core of the Second Amendment, defined by *Heller* as self-defense in the home.  If the burden was *de minimis*, the law was subject to intermediate scrutiny; if the burden was substantial and affected the core of the right, the law was subject to strict scrutiny." *Id.* (citations omitted).

114 (10th Cir. 2024); *United States v. Morton*, 123 F.4th 492, 495–96 (6th Cir. 2024). Because it is undisputed that Dabidah is part of the "the people whom the Second Amendment protects," the question before the Court is whether the "right to keep and bear Arms" covers Dabidah's possession of a machinegun. *Bruen*, 597 U.S. at 31–32.

Dabidah argues that the plain text of the Second Amendment guarantees the "right of the people to keep and bear arms," which extends to "all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." Doc. 21 at 6 (quoting *Heller*, 554 U.S. at 582). Further, because machineguns can be carried and used in an offensive or defensive manner, Dabidah argues that they constitute bearable arms by the plain text of the Second Amendment. Doc. 21 at 6–7 (citing *Heller*, 554 U.S. at 584 (defining "bear arms" as "wear, bear or carry . . . upon the person or in the clothing or in a pocket, for the purpose . . . of being armed and ready for offensive or defensive action")).

However, the Supreme Court has explained that "the right secured by the Second Amendment is not unlimited," and it is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Heller*, 554 U.S. at 626. In *Heller*, the Supreme Court interpreted the holding of a prior Second Amendment decision, *United States v. Miller*, 307 U.S. 174 (1939), to state "that the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short barreled shotguns." *Heller*, 554 U.S. at 625. In other words, the scope of the Second Amendment does not extend to weapons that are not "in common use at the time." *See Heller*, 554 U.S. at 627 (explaining that the common use limitation is "fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons'"); *see also Antonyuk*, 120 F.4th at 961. In this context, "in common use at the time" refers to "weapons in use today," not at the time of ratification. *Maloney v. Singas*, 106 F. Supp. 3d 300, 310 (E.D.N.Y. 2015). Courts have also held that—as part of the common use limitation described in *Heller*—

the Second Amendment does not cover weapons that are "dangerous and unusual." *See, e.g.*, *United States v. Henry*, 688 F.3d 637, 640 (9th Cir. 2012); *Hollis v. Lynch*, 827 F.3d 436, 446 (5th Cir. 2016) ("If a weapon is dangerous and unusual, it is not in common use and not protected by the Second Amendment."), *abrogated on other grounds by United States v. Diaz*, 116 F.4th 458 (5th Cir. 2016); *United States v. McCartney*, 357 F. App'x 73, 76 (9th Cir. 2009) ("The Second Amendment . . . does not extend to dangerous and unusual weapons (citation and internal quotation marks omitted)).

After *Heller*, the Second Circuit and numerous other courts of appeals have held that machineguns are *not* in common use and thus not covered by the Second Amendment.[2] *See, e.g.*, *United States v. Zaleski*, 489 F. App'x 474, 475 (2d Cir. 2012) ("[T]he Second Amendment does not protect [the] personal possession of machineguns." (citing *Heller*, 554 U.S. at 624–25)); *United States v. One (1) Palmetto State Armory PA-15 Machinegun Receiver/Frame, Unknown Caliber Serial No. LW001804*, 822 F.3d 136, 142 (3d Cir. 2016) ("[W]e repeat today that the Second Amendment does not protect the possession of machine guns. They are not in common use for lawful purposes."); *Hollis*, 827 F.3d at 451 ("Machineguns are dangerous and unusual and therefore not in common use."); *Henry*, 688 F.3d at 640 ("We agree with the reasoning of our sister circuits that machine guns are 'dangerous and unusual weapons' that are not protected by the Second Amendment."); *United States v. Fincher*, 538 F.3d 868, 874 (8th Cir. 2008) ("Machine guns are not in common use by law-abiding citizens for lawful purposes and therefore fall within the category of dangerous and unusual weapons that the government can prohibit for individual use.").

Nonetheless, Dabidah argues that the "plain text" of the Second Amendment protects his right "to keep and bear arms," without reference to the firearm at issue, and

---

[2] The parties have not cited to a circuit court case that has held otherwise.

that "to interpret the . . . plain text any differently would require the Court to ignore step one of *Bruen*'s instructions. Doc. 21 at 6; Doc. 25 at 3.

However, *Bruen* did not change the understanding that the scope of the Second Amendment is limited to "arms" that are in "'common use' today for self-defense." *See Bruen*, 577 U.S. at 21, 32 ("Having made the constitutional standard endorsed in *Heller* more explicit . . . ."); *id.* at 80 (Kavanaugh J., joined by Roberts C.J., concurring) ("[A]s *Heller* and *McDonald* established . . . the Second Amendment allows a 'variety' of gun regulations." (quoting *Heller*, 554 U.S. at 636)); *see also Lane v. Cacace*, No. 22-cv-10989 (KMK), 2025 WL 903766, at *6–7 (S.D.N.Y. Mar. 25, 2025) (explaining that the common use inquiry determines whether a weapon is an "arm" within the meaning of the Second Amendment, and that this is consistent with the Supreme Court's analysis in *Bruen*).

Indeed, this Court and others have explained that whether a weapon is in "common use," is a question that is properly considered at step one of the *Bruen* analysis. *See Calce v. City of New York*, No. 21-cv-8208 (ER), 2025 WL 895414, at *7 (S.D.N.Y. Mar. 24, 2025) ("This Court follows the weight of authority in determining that that the 'common use' analysis is part of Step 1."); *Cacace*, 2025 WL 903766, at *7 (deciding to follow the "overwhelming majority of courts [in] considering . . . common use at step one."); *see, e.g.*, *United States v. Alaniz*, 69 F.4th 1124, 1128 (9th Cir. 2023) ("*Bruen* step one involves a threshold inquiry. In alignment with *Heller*, it requires a textual analysis, determining . . . whether the weapon at issue is 'in common use today for self-defense.'" (internal quotation marks omitted)); *Rocky Mountain Gun Owners*, 121 F.4th at 113–114; *Antonyuk*, 120 F.4th at 981. This is consistent with *Heller*'s framing of the "common use" analysis as part of the determination of what "sorts of weapons" are protected by the Second Amendment. *Heller*, 554 U.S. at 627; *see also id.* at 625 (stating it "accords with the historical understanding of the *scope of the right*" to bear arms to say that the "Second Amendment does not protect those weapons not typically possessed by law-abiding

6

citizens for lawful purposes" (emphasis added)).  Moreover, "in *Bruen* itself, *at the outset of its textual analysis*, the Supreme Court established that the handguns at issue were not disputed to be 'in common use' for self-defense, and only then turned to Step 2, the assessment of the Nation's historical tradition of firearm regulation."  *Calce*, 2025 WL 895414, at *7 (citing *Bruen*, 597 U.S. at 32–34).  This step one analysis includes the determination of whether the firearm is a dangerous and unusual weapon.  *See United States v. Berger*, 715 F. Supp. 3d 676, 693 (E.D. Pa. 2024) ("Whether a weapon is dangerous and unusual determines whether it is in common use.  And the *Heller* Court explained that the in common use label limits the sorts of weapons protected by the Second Amendment's right to keep and carry arms.  Because determining which arms the amendment covers is a textual matter, in this Court's view (and others' too), the dangerous and unusual issue is part of the textual analysis at *Bruen*'s step one." (citations and internal quotation marks omitted) (quoting *United States v. Lane*, 689 F. Supp. 3d 232, 252 n.22 (E.D. Va. 2023))).

    Thus, pre-*Bruen* decisions holding that machineguns are "dangerous and unusual weapons" that are not in "common use" remain consistent with both *Bruen* and *Heller*.  *See, e.g.*, *United States v. Alsenat*, 734 F. Supp. 3d 1295, 1302 (S.D. Fla. 2024) ("Despite the pronouncement of a new test in *Bruen*, the *Heller/Miller* analysis remains the same."); *United States v. Broadbent*, No. 19-cr-00155 (DJC), 2023 WL 6796468, at *4 (E.D. Cal. Oct. 13, 2023) (explaining that *Bruen* did not disturb prior Ninth Circuit precedent holding that there is no Second Amendment right to possess a machinegun); *DeWilde v. United States*, No. 23-cv-00003 (SWS), 2023 WL 4884582, at *7 (D. Wyo. July 17, 2023) (explaining that nothing in *Bruen* brings into question the prior case law holding that "machineguns are simply outside the protection of the Second Amendment").

    Accordingly, the Court joins the majority of post-*Bruen* district courts in continuing to hold that machineguns are outside the scope of the Second Amendment.

*See, e.g.*, *United States v. Mitchell*, 734 F. Supp. 3d 702, 709 (N.D. Ohio 2024) ("[M]achineguns are 'dangerous and unusual weapons' whose possession is not protected under the Second Amendment . . . ."); *Berger*, 715 F. Supp. 3d at 693 ("[T]he Second Amendment does not protect machineguns because they are not in common use today for self-defense. The defendants' arguments for protection of their machineguns fly in the face of *Heller*, *Bruen*, and every other decision that has ever addressed whether the Second Amendment protects an individual's possession of machineguns."); *United States v. Cooperman*, No. 22-cr-146, 2023 WL 4762710 (SJC), at*3 (N.D. Ill. July 26, 2023) ("[T]he Court joins other courts in this district and elsewhere in holding that possessing machineguns is not conduct covered by the plain text of the Second Amendment as machineguns are dangerous and unusual weapons."); *United States v. Wilson*, No. 24-cr-027-P-1 (MTP), 2024 WL 1144251, at *3 (N.D. Tex. Mar. 15, 2024) ("[T]he Court finds machineguns are within the category of 'dangerous and unusual weapons' that do not receive Second Amendment protection."); *United States v. Kittson*, No. 21-cr-00075 (IM), 2023 WL 5015812, at *3 (D. Or. Aug. 7, 2023) ("Following *Bruen*, this Court finds that machineguns remain unprotected by the Second Amendment."); *Alsenat*, 734 F. Supp. 3d at 1306 ("[M]achineguns . . . are 'dangerous and unusual' under any formulation of [the] *Heller/Miller* analysis and are not afforded Second Amendment protection.").

In support of his constitutional challenge, Dabidah primarily relies on one case which found that § 922(o) is unconstitutional, *United States v. Morgan*, which is contrary to the overwhelming weight of authority cited above. *United States v. Morgan*, 23-cr-10047 (JWB), 2024 WL 3936767 (D. Kan. Aug. 26, 2024), *appeal docketed*, No. 24-3141 (10th Cir. Sept. 20, 2024).[3] In *Morgan* the court quickly determined at step one of the *Bruen* analysis that machineguns were covered by the plain text of the Second Amendment because they are "arms that can be carried in hand." *Id.* at *2. In doing so,

---

[3] Dabidah also cites *United States v. Brown*, 23-cr-123 (CWR), 2025 WL 429985 (S.D. Miss. Jan. 29, 2025), which relies on *Morgan*. The Court declines to follow *Brown* for the same reasons discussed herein.

8

it failed to address even once whether machineguns were in common use at the time for self-defense. This is inconsistent with both *Heller* and *Bruen*. *See, e.g.*, *United States v. Jones-Lusk*, No. 24-cr-428 (TDD), 2025 WL 44141, at *2 (W.D. Okla. Jan. 7, 2025) ("[A]s the above-cited Supreme Court cases make clear, what makes a firearm protected by the Second Amendment is not only that it is 'bearable' in the sense that it can be carried, but also that it has obtained a measure of common use for a lawful purpose."); *United States v. Johnson*, No. 24-cr-20083 (DML), 2024 WL 4612888, at *13 (E.D. Mich. Oct. 29, 2024) ("*Morgan*'s conclusion that machineguns and their components should be assessed at *Bruen*'s step-two ignores *Bruen* itself, which adopts *Heller*'s 'dangerous and unusual' language as the threshold question of whether the Second Amendment's plain text covers the conduct at issue."); *United States v. Bradley*, No. 24-cr-00056, 2025 WL 487256, at *5 (S.D. Ohio Feb. 13, 2025) ("[T]he holding in *Morgan* departs from even the Supreme Court's own guidance on the Second Amendment.").

Instead, the court quickly moved on to the second step where it erroneously addressed whether machineguns are "dangerous and unusual weapons." *Morgan*, 2024 WL 3936767, at *2–3. The *Morgan* court found that "machineguns are not unusual" because they "have been in existence for well over a century," and "[t]here are over 740,000 legally registered machineguns in the United States today." *Id.* at *4 (citations omitted). Dabidah similarly argues that machineguns "can hardly be defined as unusual" because of their prevalence in the United States, citing recent ATF statistics showing that there are more than 740,000 legally registered machineguns in the United States. Doc. 25 at 7–8; Doc. 25-1. This exact argument, however, has been considered and rejected by other courts. *See, e.g.*, *United States v. Simien*, 655 F. Supp. 3d 540, 554 (W.D. Tex. 2023) ("Although the number of civilian-owned machineguns has increased to about 740,000, this amount—which is less than .2% of total firearms in the United States—remains too insignificant for machineguns to be considered in common use."); *Mitchell*, 734 F. Supp. 3d at 708 ("Considering the statistics provided by Defendant ('741,146

9

machineguns possessed by Americans'), the Court finds that machineguns *are* 'dangerous and unusual weapons,' and that their possession is not covered under the plain text of the Second Amendment." (emphasis added)); *Cooperman*, 2023 WL 4762710, at *3; *Berger*, 715 F. Supp. 3d at 692.

The Court finds Dabidah's reliance on *Morgan* unpersuasive, and instead follows the weight of authority in concluding that machineguns are "dangerous and unusual" weapons that are not in "common use" for self-defense.

### B. Step Two

Because the Court finds that § 922(o) regulates conduct outside the scope the Second Amendment, the Court does not proceed to step two.

### IV. CONCLUSION

For the foregoing reasons, Dabidah's motion to dismiss is DENIED. The parties are directed to appear for a conference on April 16, 2025 at 11:30 a.m. in Courtroom 619 of the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, NY 10007. The clerk of the Court is respectfully directed to terminate the motion, Doc. 20.

It is SO ORDERED.

Dated:   April 11, 2025
         New York, New York

                                                    _____
                                                    EDGARDO RAMOS, U.S.D.J.

10