P561DABP

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4               v.                        24 Cr. 514 (ER)

 5   FAREED DABIDAH,

 6               Defendant.                Plea
     ------------------------------x
 7
                                          New York, N.Y.
 8                                        May 6, 2025
                                          2:30 p.m.
 9

10   Before:

11                   HON. EDGARDO RAMOS,

12                                        District Judge

13
                        APPEARANCES
14
     JAY CLAYTON
15        United States Attorney for the
          Southern District of New York
16   BY:  ANDREW W. JONES, ESQ.
          Assistant United States Attorney
17
     FEDERAL DEFENDERS OF NEW YORK INC.
18        Attorneys for Defendant
     BY:  KRISTOFF WILLIAMS, ESQ.
19

20

21

22

23

24

25
```

P561DABP

1          (Case called)

2          THE DEPUTY CLERK:  Counsel, please state your name for

3    the record.

4          MR. JONES:  Good afternoon, your Honor.  Andrew Jones

5    for the government.

6          MR. WILLIAMS:  Good afternoon, your Honor.  Kristoff

7    Williams for Mr. Dabidah, who is present.

8          THE COURT:  Good afternoon to you all.

9          Mr. Jones, what are we doing today?

10         MR. JONES:  Your Honor, I believe the defendant wishes

11   to enter a plea of guilty to the one-count indictment.

12         THE COURT:  Mr. Williams?

13         MR. WILLIAMS:  That is correct.

14         THE COURT:  Very well.

15         Mr. Dabidah, your attorney has advised me that you

16   wish to enter a plea of guilty.

17         THE DEFENDANT:  Yes.

18         THE COURT:  I'm happy to take your plea, but before I

19   do that, I need to ask you a series of questions, and I'm

20   trying to make two large determinations.  I'm trying to

21   determine in the first instance that you understand what is

22   going on here today and the consequences of pleading guilty,

23   and I'm also trying to determine whether you are in fact guilty

24   of the crime to which you wish to pled guilty, and in order to

25   make those determinations, I have to ask you a series of

P561DABP

1    questions.  It's vitally important that you be absolutely

2    truthful as you answer those questions, so I'm going to place

3    you under oath, okay?

4            THE DEPUTY CLERK:  Please stand and raise your right

5    hand.

6            (Defendant sworn)

7            THE COURT:  Sir, you may be seated, and you may remain

8    seated for the balance of today's proceedings.

9            As I indicated, I'm going to ask you some questions.

10   If I ask you a question and you don't understand it, let me

11   know that and I will rephrase it, or if I ask you a question

12   and you wish to speak with Mr. Williams before you answer it,

13   let me know that and I'll accommodate you, okay?

14           First of all, let me also say that you are now under

15   oath, and do you understand that if you answer any of my

16   questions falsely, your answers could be used against you for

17   prosecution for perjury or for making a false statement?  Do

18   you understand that?

19           THE DEFENDANT:  I do understand.

20           THE COURT:  So now we're going to start with some

21   background questions.  Sir, what is your full name?

22           THE DEFENDANT:  Fareed Agbere Dabidah.

23           THE COURT:  Can you raise your voice, please.

24           THE DEFENDANT:  Fareed Agbere Dabidah.

25           THE COURT:  And how old are you, sir?

P561DABP

1          THE DEFENDANT:  23 years old.

2          THE COURT:  How far did you get in school?

3          THE DEFENDANT:  I attended college, but I didn't

4    complete it.

5          THE COURT:  Are you able to read and write in English?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Are you now or have you recently been

8    under the care of a doctor or psychiatrist?

9          THE DEFENDANT:  No, I have not.

10          THE COURT:  Have you ever been treated or hospitalized

11    for any mental illness or any type of addiction, including drug

12    or alcohol addiction?

13          THE DEFENDANT:  No, I have not.

14          THE COURT:  In the past 24 hours have you taken any

15    drugs, medicine, or pills, or have you consumed any alcohol?

16          THE DEFENDANT:  No.

17          THE COURT:  Is your mind clear today?

18          THE DEFENDANT:  Yes.

19          THE COURT:  And Mr. Dabidah, are you feeling well

20    enough to proceed and to understand what is going on here

21    today?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Mr. Williams has advised me that you wish

24    to enter a plea of guilty; is that correct?

25          THE DEFENDANT:  That is correct.

P561DABP

1          THE COURT:  Sir, have you had a full opportunity to

2  discuss your case with your attorney, including any possible

3  defenses that you might have?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Have you had a full opportunity to discuss

6  with Mr. Williams the consequences of entering a plea of

7  guilty?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Are you satisfied with Mr. Williams and

10  his representation of you?

11          THE DEFENDANT:  Yes.

12          THE COURT:  Does either counsel have any doubt as to

13  Mr. Dabidah's competence to enter a guilty plea at this time?

14          MR. JONES:  No, your Honor.

15          MR. WILLIAMS:  None from the defense.

16          THE COURT:  Very well.  On the basis of Mr. Dabidah's

17  responses to my questions and my observations of his demeanor,

18  I find that he is fully competent to enter a guilty plea at

19  this time.

20          By the way, is he pleading guilty to an information or

21  a—

22          MR. JONES:  No, your Honor.  There's a one-count

23  indictment that was filed in August of last year, and that's

24  what he's pleading guilty to.

25          THE COURT:  Very well.  Thank you.

P561DABP

1             Now the next series of questions that we're going to

2     go over, Mr. Dabidah, involve the rights that you are giving up

3     by pleading guilty, including constitutional rights, so please

4     do listen very carefully.

5             First, you have the right to be represented by an

6     attorney at trial and at every other stage of the proceeding.

7     If you cannot afford an attorney, an attorney would be

8     appointed to represent you without cost to you.  Do you

9     understand that?

10            THE DEFENDANT:  Yes.

11            THE COURT:  You have a right to a speedy and public

12    trial by a jury on the charges against you which are contained

13    in the indictment.  Do you understand that?

14            THE DEFENDANT:  Yes.

15            THE COURT:  At trial, you would be presumed innocent,

16    and the government would be required to prove your guilt by

17    competent evidence beyond a reasonable doubt before you could

18    be found guilty.  You would not have to prove that you were

19    innocent at trial.  Do you understand that?

20            THE DEFENDANT:  Yes.

21            THE COURT:  If there were a jury trial, the jury would

22    be composed of 12 people selected from this district, and all

23    12 would have to agree unanimously that you were guilty before

24    you could be found guilty.  Do you understand?

25            THE DEFENDANT:  Yes.

P561DABP

1          THE COURT:  At trial, you would have a right to see

2    and hear all of the witnesses against you, and your attorney

3    could cross-examine them.  Your attorney could object to the

4    government's evidence and offer evidence on your behalf.  You

5    would also have the right to have subpoenas issued to compel

6    witnesses to come to court to testify in your defense.  Do you

7    understand that?

8          THE DEFENDANT:  Yes.

9          THE COURT:  At trial, you would have a right to

10   testify if you wanted to, but no one could force you to

11   testify, and if you chose not to testify, I would tell the jury

12   that it could not hold that against you.  Do you understand?

13         THE DEFENDANT:  Yes.

14         THE COURT:  If you were convicted at trial, you would

15   have the right to appeal that verdict.  Do you understand?

16         THE DEFENDANT:  Yes.

17         THE COURT:  And Mr. Dabidah, do you understand that by

18   entering a plea of guilty here today, you are giving up all of

19   the rights that I have just described, except for your right to

20   counsel, and you will be found guilty based just on your plea

21   of guilty here today?

22         THE DEFENDANT:  Yes.

23         THE COURT:  And sir, do you further understand that

24   you can change your mind right now for any reason and decide

25   that you did not want to enter a plea of guilty?

P561DABP

1              THE DEFENDANT:  Yes.

2              THE COURT:  Now, Mr. Dabidah, have you received a copy

3    of the indictment?

4              THE DEFENDANT:  Yes, I have.

5              THE COURT:  And have you read the indictment?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Have you discussed the indictment with

8    your attorney?

9              THE DEFENDANT:  Yes.

10             THE COURT:  And do you understand that you are charged

11   in that indictment with one count of illegally possessing a

12   machine gun, in violation of 18 United States Code,

13   Section 922(o)(1)?

14             THE DEFENDANT:  Yes.

15             THE COURT:  Mr. Jones, what are the elements of that

16   offense?

17             MR. JONES:  Yes, your Honor.  There are two:

18             The first element is that the defendant knowingly

19   possessed a machine gun, as that term is defined under federal

20   law; and

21             The second is that the defendant knew or was aware of

22   the essential characteristics of the firearm that made it a

23   machine gun.

24             THE COURT:  Thank you.

25             Mr. Dabidah, did you hear what the prosecutor said?

P561DABP

1               THE DEFENDANT:  Yes.

2               THE COURT:  And sir, do you understand that if you did

3    not plead guilty to Count One, the government would have to

4    prove each of those elements of the charge beyond a reasonable

5    doubt at trial?

6               THE DEFENDANT:  Yes.

7               THE COURT:  And have you discussed with Mr. Williams

8    the possible punishment that you face by pleading guilty to

9    this charge?

10              THE DEFENDANT:  Yes.

11              THE COURT:  Sir, do you understand that this offense

12   carries a maximum term of imprisonment of ten years?

13              THE DEFENDANT:  Yes.

14              THE COURT:  A maximum term of supervised release of

15   three years?

16              THE DEFENDANT:  Yes.

17              THE COURT:  And in addition, there are financial

18   penalties, including a $100 special assessment that I must

19   impose, and a fine that I could impose that could be the

20   greater of either $250,000 or twice the gross gain from the

21   offense or twice the gross loss to any victims of the offense.

22   Do you understand that?

23              THE DEFENDANT:  Yes.

24              THE COURT:  I mentioned the term "supervised release."

25   Do you understand that supervised release means that you will

P561DABP

1    be subject to monitoring and supervision when you are released

2    from prison if I sentence you to a prison term?

3            THE DEFENDANT:  Yes.

4            THE COURT:  And that there are terms and conditions of

5    supervised release with which you must comply, and if you do

6    not comply with them, you could be returned to prison without a

7    jury trial?  Do you understand that?

8            THE DEFENDANT:  Yes.

9            THE COURT:  And do you understand that if you do

10   violate a term or condition of supervised release and are

11   returned to prison, that new prison term could be for part or

12   all of the term of supervised release and that you will not

13   receive credit for time previously served in prison on your

14   sentence?  Do you understand that?

15           THE DEFENDANT:  Yes.

16           THE COURT:  And sir, are you aware that I can also, as

17   part of your sentence, order restitution, order you to pay

18   restitution to any person injured as a result of your conduct?

19           THE DEFENDANT:  Yes.

20           THE COURT:  Mr. Dabidah, do you further understand

21   that if I accept your guilty plea and find you guilty, that

22   determination may deprive you of certain valuable civil rights,

23   such as the right to vote, the right to hold public office, the

24   right to serve on a jury, the right to possess any kind of

25   firearm, and the right to hold certain professional licenses?

P561DABP

1    Do you understand that?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Mr. Dabidah, are you a United States

4    citizen?

5              THE DEFENDANT:  Yes, I am.

6              THE COURT:  Were you born in the United States?

7              THE DEFENDANT:  No, I was not.

8              THE COURT:  In what country were you born?

9              THE DEFENDANT:  I was born in Ghana, Africa.

10             THE COURT:  And are you a naturalized U.S. citizen?

11             THE DEFENDANT:  Yes.

12             THE COURT:  Mr. Williams, have you discussed with

13   Mr. Dabidah the possible consequences of his immigration status

14   as a result of his guilty plea?

15             MR. WILLIAMS:  Yes, your Honor.

16             THE COURT:  Okay.  So Mr. Dabidah, do you understand

17   that as a result of your guilty plea, there may be adverse

18   effects on your immigration status?

19             THE DEFENDANT:  Yes.

20             THE COURT:  Do you understand, for example, that you

21   may lose your citizenship if your naturalization was obtained

22   by concealment of a material fact or by willful

23   misrepresentation or otherwise illegally obtained?

24             THE DEFENDANT:  Yes.

25             THE COURT:  And if that happened, you could be removed

P561DABP

1    or deported from the United States and denied admission to the

2    United States in the future.  Do you understand that?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Do you understand that if you were

5    denaturalized, any children that obtained citizenship through

6    you might lose their citizenship?

7              THE DEFENDANT:  Yes.

8              THE COURT:  And did you discuss the possible

9    immigration consequences of your plea with Mr. Williams?

10             THE DEFENDANT:  Yes.

11             THE COURT:  And do you understand that you will be

12   bound by your guilty plea regardless of these immigration

13   consequences and regardless of any advice you have received

14   from your counsel or others regarding any immigration

15   consequences?

16             THE DEFENDANT:  Yes.

17             THE COURT:  Now the next series of questions that we

18   need to discuss, Mr. Dabidah, involve the sentencing

19   guidelines.  So let me begin by asking you, do you understand

20   that there are sentencing guidelines that I must consider in

21   determining the appropriate sentence in your case?

22             THE DEFENDANT:  Yes.

23             THE COURT:  Have you spoken with Mr. Williams about

24   how the guidelines apply to your case?

25             THE DEFENDANT:  Yes.

P561DABP

```
 1                THE COURT:  Do you understand that I first have to
 2      calculate the applicable guidelines range and then consider
 3      that range in determining what your sentence will be?
 4                THE DEFENDANT:  Yes.
 5                THE COURT:  Do you understand that I will not be able
 6      to make that calculation until I receive a final copy of a
 7      presentence report that will be prepared by the probation
 8      department?
 9                THE DEFENDANT:  Yes.
10                THE COURT:  And do you further understand that even
11      after I receive that final report and calculate the applicable
12      guidelines range, I have the ability to impose a sentence that
13      can be higher or lower than what the guidelines recommend?
14                THE DEFENDANT:  Yes.
15                THE COURT:  Do you also understand that in addition to
16      calculating the guidelines range and considering the guideline
17      range, I also have to consider a number of other factors which
18      are set forth in a law known as 18 United States Code, Section
19      3553(a), which requires me to take into consideration, among
20      other factors, your history and characteristics and the nature
21      of the offense in determining the appropriate sentence in your
22      case?  Do you understand that?
23                THE DEFENDANT:  Yes.
24                THE COURT:  And so even after I calculate the
25      applicable guidelines range, I must consider these other
```

P561DABP

1    factors and, again, might settle on a sentence higher or lower

2    than what the guidelines recommend.  Do you understand that?

3            THE DEFENDANT:  Yes.

4            THE COURT:  And do you also understand that if your

5    attorney or anyone else has attempted to estimate or predict

6    what your sentence will be, their estimate or prediction could

7    be wrong?

8            THE DEFENDANT:  Yes.

9            THE COURT:  And while it is perfectly appropriate for

10   you and Mr. Williams to have discussed how the sentence will be

11   calculated, no one can give you any assurance of what your

12   sentence will be.  Do you understand that?

13           THE DEFENDANT:  Yes.

14           THE COURT:  And Mr. Dabidah, I say all of this to you

15   because you need to understand today that if your sentence is

16   different from what your attorney or anyone else told you it

17   might be, or if it is different from what you expect, you will

18   still be bound by your plea agreement and you will not be

19   allowed to withdraw your plea.  Do you understand that?

20           THE DEFENDANT:  Yes.

21           THE COURT:  I'm sorry.  I used the term plea

22   agreement.  You will still be bound by your guilty plea, and

23   you will not be allowed to withdraw your guilty plea.  Do you

24   understand that?

25           THE DEFENDANT:  Yes.

P561DABP

1          THE COURT:  And sir, do you understand that if you are

2    sentenced to prison, there is no parole in the federal system

3    and you will not be released early on parole?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Okay.  Now the next thing that we have to

6    discuss is the letter that you received from the government.  I

7    do have a letter dated May 6, 2025, addressed to Mr. Williams.

8    It's a three-page letter.  It's what's known as a *Pimentel*

9    letter.  Sir, did you receive a copy of this letter?

10         THE DEFENDANT:  Yes, I have.

11         THE COURT:  And do you understand that this so-called

12   *Pimentel* letter from the government to your lawyer is just the

13   government's best guess, as of today, as to how they believe

14   the sentencing guidelines will operate in your case?

15         THE DEFENDANT:  Yes.

16         THE COURT:  Do you understand that if between now and

17   the time of your sentencing, the government realizes that it

18   made a mistake or gets new information, the government could

19   take a different position at your sentencing regarding the

20   applicable guidelines range?  Do you understand that?

21         THE DEFENDANT:  Yes.

22         THE COURT:  This letter is not a promise by the

23   government.  Do you understand?

24         THE DEFENDANT:  Yes.

25         THE COURT:  Do you also understand that there is

P561DABP

1   nothing in this letter that is binding on me?

2           THE DEFENDANT:  Yes.

3           THE COURT:  Do you understand that I will be making my

4   own determination regarding how the guidelines operate in your

5   case?

6           THE DEFENDANT:  Yes, I do.

7           THE COURT:  Let me just ask, I did note that the

8   guideline calculation in the *Pimentel* presumed a number of

9   machine guns that were owned; is that correct?

10          MR. JONES:  Yes, your Honor.  I think the enhancement

11  in the guidelines is based off of the number of firearms, and

12  at this point there were almost——more than three dozen machine

13  gun conversion devices, as well as more than two dozen

14  3D-printed handguns, either complete or handgun frames, found

15  at the defendant's apartment.

16          THE COURT:  Okay.  Obviously we don't have to

17  determine this now, but will there be an issue, Mr. Williams,

18  at the sentencing concerning uncompleted handguns or

19  uncompleted machine guns?

20          MR. WILLIAMS:  Yes, your Honor, there may be an

21  objection to that, to the calculations.

22          THE COURT:  Very well.

23          Okay.  So Mr. Dabidah, again, this is not a

24  determination that we're making today, but that may be an issue

25  before I impose sentence, okay?

P561DABP

1          THE DEFENDANT:  Okay.

2          THE COURT:  Mr. Jones, will you please summarize what

3     the government would expect to prove if this case were to

4     proceed to trial.

5          MR. JONES:  Yes, your Honor.

6          Among other things, if going to trial, we would put in

7     evidence the defendant's history of building 3D-printed

8     handguns, which would include records from eBay and other

9     online retailers of handgun parts that were shipped to his

10    residence in the Bronx, as well as the results of a search

11    warrant executed at his apartment in the Bronx last August.

12    The result of that search warrant included, among other things,

13    approximately 39 machine gun conversion devices, meaning

14    devices that are designed to turn semiautomatic firearms into

15    automatic firearms, some that were for handguns and some that

16    were for assault rifles.  Beyond that, there were more than a

17    dozen assembled ghost gun handguns, including about six of them

18    with the machine gun conversion devices installed at the time

19    of the search.  There were about 15 additional 3D-printed

20    handgun frames, two firearms silencers, various magazines for

21    use in these handguns and in the assault rifles, as well as

22    ammunition for handguns, for M4-style assault rifles and for

23    AK-47-style assault rifles, as well as the equipment needed to

24    reload and manufacture additional ammunition.  So that's the

25    core of what we'd put in at trial.

P561DABP

1          THE COURT:  Manufactured ammunition?

2          MR. JONES:  I guess what I mean is to reload it.  So

3    if you took a spent shell casing and a projectile, there's a

4    packing machine which you can add gunpowder into it, put a new

5    primer onto the shell casing, and so you can repurpose

6    previously expended ammunition.

7          THE COURT:  Okay.  Thank you, Mr. Jones.

8          Mr. Dabidah, did you hear what the prosecutor said?

9          THE DEFENDANT:  Yes.

10          THE COURT:  And Mr. Dabidah, have you clearly

11   understood everything that has happened here today so far?

12          THE DEFENDANT:  Yes.

13          THE COURT:  Mr. Dabidah, will you now please tell me

14   in your own words what it was that you did that you believe

15   makes you guilty of the crime to which you are pleading guilty.

16          THE DEFENDANT:  On August 15, 2014, in the Bronx, I

17   knowing—oh, I'm sorry—2024, in the Bronx, I knowingly

18   possessed a machine gun.  I knew that my possession of a

19   machine gun was wrong, and I apologize for my actions.

20          THE COURT:  And Mr. Dabidah, when you did that, did

21   you know that what you were doing was wrong and against the

22   law?

23          THE DEFENDANT:  Yes, I did.

24          THE COURT:  Did anyone threaten you or force you to do

25   that?

P561DABP

1          THE DEFENDANT:  No.

2          THE COURT:  Does either counsel wish me to make any

3     further inquiries?  Mr. Jones?

4          MR. JONES:  This might be overkill.  I think just—the

5     defendant used the word "machine gun."  I would just ask the

6     Court to confirm that he understood that the components or the

7     firearms he possessed were capable of automatic fire.

8          THE COURT:  Okay.  Mr. Dabidah, did you understand

9     that the firearm or components that you owned were capable of

10    automatic fire?

11         THE DEFENDANT:  Yes.

12         THE COURT:  Anything else, Mr. Jones?

13         MR. JONES:  No, your Honor.  Thank you.

14         THE COURT:  Anything from you, Mr. Williams?

15         MR. WILLIAMS:  No, your Honor.

16         THE COURT:  Mr. Williams, do you know of any reason

17    why Mr. Dabidah should not be permitted to plead guilty?

18         MR. WILLIAMS:  I do not.

19         THE COURT:  Mr. Williams, do you believe that there is

20    an adequate factual basis to support the plea of guilty?

21         MR. WILLIAMS:  I do.

22         THE COURT:  Mr. Jones, is there an adequate factual

23    basis to support the plea of guilty?

24         MR. JONES:  Yes, there is, your Honor.

25         THE COURT:  Mr. Dabidah, how do you now plead to the

P561DABP

1   charge in Count One of the indictment, guilty or not guilty?

2              THE DEFENDANT:  Guilty.

3              THE COURT:  Are you in fact guilty of that charge?

4              THE DEFENDANT:  I'm sorry.  Repeat that?

5              THE COURT:  Sure.  Are you in fact guilty of that

6   charge?

7              THE DEFENDANT:  Yes, I am.

8              THE COURT:  Are you pleading guilty voluntarily and of

9   your own free will?

10              THE DEFENDANT:  Yes, I am.

11              THE COURT:  Is the government seeking forfeiture?

12              MR. JONES:  We likely will be, your Honor.  I don't

13   have an order at this time.

14              THE COURT:  Very well.  Is there a forfeiture

15   allegation in the indictment?

16              MR. JONES:  Yes, there is.

17              THE COURT:  There's a forfeiture allegation in the

18   indictment, Mr. Dabidah.  Do you admit to the forfeiture

19   allegation?

20              THE DEFENDANT:  Yes.

21              THE COURT:  Very well.

22              Mr. Dabidah, because you acknowledge that you are in

23   fact guilty as charged in Count One of the indictment, because

24   I find that you know your rights and are waiving them knowingly

25   and voluntarily, with an understanding of the consequences of

P561DABP

```
1   your plea, including the potential sentences that may be

2   imposed, I accept your guilty plea and find you guilty on that

3   charge.

4           I will now direct that a presentence investigation be

5   conducted by the probation office and that a presentence report

6   be prepared.

7           You will be receiving a draft of the report before I

8   receive the final version, Mr. Dabidah——both you and your

9   lawyer.  You should read that draft report very carefully with

10  your lawyer and bring to my attention any mistakes that you may

11  find therein.  You will be interviewed also as part of that

12  process.  You can and should have your lawyer with you when you

13  are interviewed by the probation department.

14          It is also entirely possible that probation may wish

15  to speak with members of your family with whom you live as part

16  of that process.

17          The presentence report will be a very important part

18  in my determination as to what your sentence will be, so again,

19  please do go over it very carefully with your attorney.

20          Do we have a date for sentencing?

21          THE DEPUTY CLERK:  Yes.  August 15, 2025, at 11 a.m.

22          MR. WILLIAMS:  I have a duty day that day.  If the day

23  before works or any time the next week, with the exception of

24  Tuesday?

25          THE DEPUTY CLERK:  August 14, at 11:30.
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

P561DABP

1            MR. JONES:  That's fine with me, your Honor.

2            THE COURT:  Okay.

3            MR. WILLIAMS:  Thank you.

4            THE COURT:  Very well.  Is there anything else we

5    should do today, Mr. Jones?

6            MR. JONES:  Nothing from me, no, your Honor.

7            THE COURT:  Mr. Williams?

8            MR. WILLIAMS:  No, your Honor.  Thank you.

9            THE COURT:  In that event, we will see you in August.

10   Everyone please stay well.

11           THE DEPUTY CLERK:  All rise.

12                          o0o

13

14

15

16

17

18

19

20

21

22

23

24

25